## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## EASTERN DIVISION

No. 4:12-CV-247-FL

| | |
|---|---|
| WILLIE MAE BROWN, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-26, DE-28] pursuant to Fed. R. Civ. P. 12(c). Claimant Willie Mae Brown ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. Claimant responded to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on June 19, 2009 and SSI on April 28, 2010, alleging disability beginning November 26, 2007. (R. 12). Both claims were denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge

("ALJ") was held on March 23, 2011, at which Claimant appeared without the assistance of counsel or other representative and a vocational expert ("VE") appeared and testified. *Id.* On May 23, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 12-24). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 7-8), and submitted additional evidence as part of her request (R. 532-577). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on September 11, 2012. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in

2

conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

3

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's credibility and (2) improper evaluation of medical opinion evidence. Pl.'s Mem. [DE-27] at 5-10.

## IV. FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 14). Next, the ALJ determined Claimant had the following severe impairments: cervical disc herniation, lumbar spondylosis, depression, post-traumatic stress disorder (PTSD), and alcohol abuse. *Id.* The ALJ also found Claimant had a nonsevere impairment of carpal tunnel syndrome or bilateral hand paresthesias. (R. 15). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction in her activities of daily living, moderate difficulties in social functioning and concentration, persistence and pace with no episodes of decompensation. (R. 15-16).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a reduced range of light work.[1] (R. 17). The ALJ also identified the following

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R.

non-exertional limitations: remember and carry out one to two step instructions; perform simple, routine, repetitive tasks; and only occasional interaction with the public. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 17-22). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a mail carrier and home health attendant. (R. 22). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 22-23).

## II.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 52 years old and unemployed. (R. 199, 204). Claimant is a high school graduate and was previously licensed as a CNA and cosmetologist. (R. 290). Claimant was last employed with the United States Postal Service for approximately seven years, where her duties included sorting mail, loading delivery vehicles, and delivering mail. (R. 236). Claimant's past work experience also includes work as a CNA. *Id.*

Claimant explained numerous medical conditions supporting her disability claim and her inability to work full-time. These medical conditions include pinched nerves in her neck, back pain, carpal tunnel syndrome in her left hand, and depression. (R. 35, 37). Claimant fell while working and has not been able to work since. (R. 36). Claimant has difficulty sleeping, but is prescribed sleeping medication and will often sleep eight hours during the day. *Id.* Claimant also has difficulty holding objects in her left hand and frequently drops things. (R. 35). Claimant is unable to lift more

§§ 404.1567(b), 416.967(b).

5

than 10 pounds and feels a strain in her neck anytime she tries to lift something. *Id.* Claimant also has difficulty walking and cannot walk more than 15 minutes because her legs "lock up" requiring her to sit down for a long period of time. (R. 36-37). Claimant has difficulty rising from a seated position and getting her legs mobile again once seated because both legs feel numb. (R. 37). Claimant also has difficulty stooping or bending over because of problems in her lower back. *Id.*

Claimant experiences constant pain making it difficult for her to stand and sit for a long period of time. (R. 35). Claimant becomes uncomfortable after sitting for more than two hours. (R. 42). Claimant stated the only way she can manage her pain is with "heavy sedative medication." (R. 36). Claimant lost her medical insurance in 2009 through divorce and now only receives medical treatment when she goes to the emergency room because she is unable to afford other treatment. (R. 39, 41). Claimant is still able to obtain her medication and has continued to receive updated pain medication prescriptions. (R. 40). Claimant states the pain medication helps her "somewhat," but she believes that her body is immune making it less effective. *Id.* A spinal surgeon evaluated Claimant and she received at least two spinal injections for pain management with the first injection providing relief for almost one month. (R. 41, 44). Claimant also received therapy which helped her back and neck pain "some." (R. 41).

Claimant also has depression that has worsened over the years, but is currently treated with medication and bi-weekly counseling sessions which has helped Claimant "a lot." (R. 37-38). Specifically, the medication has improved Claimant's ability to get along with other individuals, but she still has difficulty concentrating. (R. 38). Claimant's day usually consists of staying in her bed until late morning watching TV, unless she has an appointment, and fixing herself a sandwich at lunch. (R. 45). Claimant lives by herself, but her daughter and son come by her house everyday to

6

assist with household chores because Claimant is unable to cook or clean. (R. 43). Claimant drives herself to doctor's appointments and the store for errands, but stays within a close distance of home and her daughter manages the grocery shopping. (R. 44). Claimant does not leave her house everyday, but does go to a family member's house to visit and spends times with her grandchildren. (R. 45). Claimant is not able to babysit her grandchildren because she cannot "stand all that hollering." *Id.*

## III. Vocational Expert's Testimony at the Administrative Hearing

Coretta Harrelson testified as a VE at the administrative hearing. (R. 46-50). After the VE's testimony regarding Claimant's past work experience (R. 46-47), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed several hypothetical questions. First, the ALJ asked whether an individual with the physical capacity to perform light work involving one-to two-step instructions, simple, routine and repetitive tasks, occasional contact and occasional interaction with the public could perform any jobs. (R. 47). The VE opined that the jobs of bander (DOT# 733.687-018), housekeeper (DOT# 323.687-014), and electronics inspector, packer (DOT# 559.687-074) would be available to the hypothetical individual. (R. 47-48). After the VE's response, the ALJ posed the following hypothetical:

[L]et's further limit the individual to frequent handling objects, that is gross manipulation, with the left, non-dominant hand, and frequent fingering, that is fine manipulation of items no smaller than the size of a paperclip with the non-dominant left hand, would these limitations further erode the jobs that you've given me?

(R. 48). The VE testified that such individual would still be able to perform the listed jobs. *Id.* The ALJ next asked the VE whether jobs were available to an individual that is off task 20 percent of the day, in addition to the regularly scheduled breaks. *Id.* The VE responded that no jobs would be

7

available for such individual and further opined that an employer would not "tolerate" an individual with this requirement. (R. 49). Finally, the ALJ asked the VE whether jobs were available to an individual capable of sedentary work with the same non-exertional limitations listed in the second hypothetical. *Id.* The VE indicated the individual could perform the jobs of surveillance system monitor (DOT# 379.367-010), lens inserter (DOT# 713.687-026), and alarm mechanism adjuster (DOT# 715.684-010). *Id.*

# V. DISCUSSION

## I.   The ALJ's Assessment of Claimant's Credibility.

Claimant contends the ALJ's credibility finding is not supported by the record and the ALJ's reasons for discounting Claimant's testimony are incorrect and/or improper. Pl.'s Mem. at 5-8. This court disagrees.

It is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *See Craig*, 76 F.3d at 593-94. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at \*2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's

8

ability to work. *See Craig*, 76 F.3d at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at \*3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See Craig*, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at \*3. In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

1. effect of symptoms on claimant's daily activities
2. location, duration, frequency and intensity of the symptom(s)
3. factors that precipitate or aggravate claimant's symptoms
4. type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
5. non-medical treatment received for relief of the symptom(s)
6. any non-treatment measures used to relieve the symptom(s)
7. other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at \*3.

After reviewing the ALJ's decision, this court finds the ALJ made the necessary findings in support of her credibility determination and analysis of Claimant's complaints of pain and depression pursuant to the framework explained above. *See Shively*, 739 F.2d at 989 (noting an ALJ's observations regarding credibility should be given great weight because she had the opportunity to

9

observe Claimant). Here, the ALJ found that Claimant had medically determinable impairments reasonably capable of causing her alleged symptoms, but concluded Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. (R. 17-18). In reaching this conclusion, the ALJ noted a number of factors, including Claimant's ability to independently complete activities of daily living. (R. 20). Specifically, the ALJ noted that Claimant lives alone, independently bathes and dresses herself, makes her bed, and cooks and cleans with some assistance from her daughters. (R. 20).

While Claimant argues that these are limited activities that necessitate a finding that Claimant cannot complete work in accordance with the ALJ's RFC, the ALJ adequately explained how these activities are inconsistent with an individual suffering from disabling back and neck pain and persistent depression. Moreover, the ALJ's findings and conclusions regarding Claimant's activities of daily living are supported by substantial evidence in the record and it is not the role of this court to re-weigh the evidence. *See Mastro*, 270 F.3d at 176 (noting it is not the task of the court to reweigh the evidence and reach its own independent conclusions). While Claimant may not be capable of performing the full range of activities she once did, the fact that she continues to perform the listed activities suggests she is capable of working. *See, e.g., Tarpley v. Astrue*, No. 5:08-CV-271-FL, 2009 WL 1649774, at *3, 11 (E.D.N.C. June 1, 2009) (adopting memorandum and recommendation, which found that ability to care for the home and exercise was substantial evidence supporting the ALJ's finding that claimant's statements of debilitation were not entirely credible). Furthermore, the ALJ recognized Claimant's back and neck impairments and accordingly limited Claimant to a reduced range of light work as opposed to a full range of light work. (R. 17). The ALJ further supported her credibility determination by assigning limited weight to two medical consultant

10

opinions opining that Claimant was capable of performing work at a higher exertional level (R. 20, 432-39, 481-88), significant weight to a medical opinion that Claimant necessitated a light duty work restriction (R. 20, 407) and little weight to a medical opinion that Claimant could not lift greater than 10 pounds (R. 20, 417-18).

Next, Claimant contends that the ALJ's other reason for discrediting Claimant, that Claimant did not seek out free medical care or emergency room care for her impairments, is flawed because Claimant may not be penalized for her inability to afford treatment. Pl.'s Mem. at 6. This court has said the following regarding free health care services:

It is true that the ALJ cannot penalize a claimant for not procuring medical care that [she] cannot afford. *See Lovejoy v. Heckler*, 790 F.2d 1114 (4th Cir. 1986); *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because [she] is too poor to obtain medical treatment that may help her."). However, it is not true that simply because an ALJ notes that a claimant has received infrequent medical treatment the ALJ is penalizing the claimant for [her] inability to pay for medical care.
There are at least two inferences that can be drawn from a plaintiff's failure to frequently seek medical attention. One is the improper inference, which the Fourth Circuit has warned against, that the plaintiff failed to procure more medical attention because [she] was too poor. The other inference is that, based on the plaintiff's medical records, the plaintiff did not seek additional medical attention because the course of treatment prescribed to [her] successfully controlled her conditions. *See Wooten v. Shalala*, 1993 U.S. App. LEXIS 18071, *10-11 (4th Cir. July 16, 1993).

*Viverette v. Astrue*, No. 5:07-CV-395-FL, 2008 WL 5087419, at *4-5 (E.D.N.C. Nov. 24, 2008).

While the ALJ did note that the record indicated Claimant lacked insurance and could not afford regular and continuing treatment (R. 20), it does not appear the ALJ penalized Claimant for an inability to afford treatment. The record does not show that Claimant sought medical treatment and was denied due to lack of funds or that Claimant was not able to afford her prescription drugs. Even before Claimant's alleged loss of insurance, the record evidences a refusal of treatment and

11

procedures by Claimant for reasons unrelated to an inability to pay, both of which were cited by the ALJ in her opinion. *See* (R. 328) (cannot take time off to complete physical therapy as prescribed by physician); (R.397) (refusal to receive an epidural injection of the lumbar spine because back pain was not significant enough, thereby maintaining her previous treatment routine and seeing a physician on an as needed basis). Additionally, Claimant never testified to not taking her prescribed medications and does not argue that free community resources were not available, but contends that Claimant's impairments of pain and depression are "not the type of impairments for which one would typically seek out occasional emergency treatment." Pl.'s Mem. at 6.

The overwhelming weight of the record shows that Claimant had considerable access to both medical treatment and medication. *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (explaining no error by ALJ in finding claimant not credible despite claim of inability to afford medical treatment where claimant was found to have access to medical attention and little difficulty in obtaining medication); *see also Wooten*, 1993 U.S. App. LEXIS 18071, at *10-11 (explaining the ALJ did not penalize claimant for the alleged inability to afford medication where it was not clear from the record that claimant could not afford medical treatment). Accordingly, the ALJ did not penalize Claimant and properly considered the treatment sought and received in determining Claimant's credibility and this argument is without merit.

## II. The ALJ's Assessment of the Medical Opinion Evidence.

Claimant contends that the ALJ improperly assessed the medical opinions in this case, specifically by (1) assigning "significant weight" to the opinion of Dr. Eric Francke;[2] (2) relying on opinions of non-examining physicians; (3) assigning little weight to the opinion of Dr. Douglas

_____

[2] The ALJ assigned significant weight, whereas Claimant's memorandum states the ALJ assigned great weight.

12

Watford; and (4) giving little weight to the opinion of Donna Ramsey, LCSW, Ph.D. Pl.'s Mem. at 8-9. This court disagrees.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

## 1.    Dr. Francke's Opinion

Claimant contends the ALJ erred in assigning significant weight to the medical opinion of Dr. Francke because his opinion was "more than three years old" and "issued before the date on which [Claimant] could have been found disabled." Pl.'s Mem. at 8. The ALJ summarized Dr. Francke's findings throughout her opinion and then explained that she assigned significant weight to Dr. Francke's opinions regarding Claimant's restriction to light duty work in September 2007,

13

November 2007 and April 2008 because "they are supported by the medical signs and findings, and the treatment records." (R. 20).

The ALJ provided reasons for assigning the weight she did to Dr. Francke's opinions and Claimant's argument that Dr. Francke's opinions are outdated such that any assignment of meaningful weight to the opinion is erroneous invites this court to re-weigh the evidence, which it may not do. *See Craig*, 76 F.3d at 589 (noting that the court's duty is not to re-weigh conflicting evidence, but determine whether substantial evidence supported the ALJ's decision to assign the resulting weight to the opinion). Claimant is correct that some of Dr. Francke's medical records, which contain the medical opinions credited by the ALJ, precede Claimant's alleged onset date. However, those opinions preceded Claimant's alleged onset date by only a few months and Dr. Francke evaluated Claimant for the same physical conditions occurring after Claimant's alleged onset date. *See generally DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) (concluding that an ALJ must analyze all the medical evidence). Further, Dr. Francke continued to treat Claimant following her alleged onset date, conducting an evaluation in January 2008 and April 2008, and his post-onset opinion was consistent with the previous two opinions that preceded the onset date. While Claimant argues that Dr. Francke's opinions are outdated, she fails to demonstrate how this is so in light of the additional evidence in treatment notes post-onset which indicate similar complaints and assessments as those reviewed by Dr. Francke.

Here, the ALJ listed the weight assigned to the treating source opinion and gave specific reasons for crediting these opinions. The court's duty is to determine if substantial evidence supports the ALJ's conclusion, not to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner.]" *Craig*, 76 F.3d at 589. Substantial

14

evidence in the record supports the decision to assign "significant weight" to Dr. Francke's opinion. Therefore, Claimant's argument fails.

## 2. State Agency Psychological Consultant's Opinions

Claimant contends that the ALJ erroneously assigned great weight to state agency psychological consultants because their opinions are not supported by the record. Pl.'s Mem. at 8. Additionally, Claimant contends that any reliance on the opinions is legal error because the opinions were not formulated with the benefit of a treating source opinion in the record. *Id.* "RFC assessments by State agency medical . . . consultants . . . are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairments," SSR 96-6p, 1996 WL 374180, at *4 (July 2, 1996), because such consultants are "highly qualified" and "are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I). The ALJ must explain the weight given to the consultant in her written decision. *Id.* §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). In evaluating RFC assessments prepared by state consultants, the ALJ follows the same process that applies to any opinion evidence, considering factors such as "the supporting evidence in the case record." *See id.* §§ 404.1527(a)-(d), 416.927(a)-(d). The opinion of a non-examining physician such as a state agency medical consultant can therefore be given significant weight so long as it is consistent with the record. *Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005).

Here, the ALJ did not err in assigning great weight to the state agency psychological consultant opinions and the ALJ adequately articulated a reason for according great weight to the state agency opinions. Although Claimant argues that the ALJ's assignment of great weight to these opinions was error because all opinions were rendered prior to the inclusion of a treating physician

15

opinion, presumably that of Dr. Ramsey who treated Claimant subsequent to all state agency evaluations, Claimant fails to undermine the ALJ's decision. The regulations do not support Claimant's contention that the absence of a mental health treating source opinion precludes any reliance by the ALJ on state agency opinions. *See* SSR 96-6p, 1996 WL 374180, at \*1-3 (stating that the "rules for considering medical and other opinions of treating sources and other sources . . . also apply when we consider the medical opinions of nonexamining sources"). Therefore, this argument lacks an arguable basis. However, the court notes that the state agency psychological consultants had the benefit of reviewing records from Claimant's gynecologist prescribing Zoloft for treatment of depression (R. 308-311) and at least one psychological consultative examination, if not two, which were performed by mental health practitioners (R. 365-67, 428-30).

Further, substantial evidence supports the ALJ's decision to assign great weight to these opinions and the ALJ adequately explained her weight determination. *Cf. Godfrey v. Astrue*, 861 F. Supp. 2d 683, 687 (E.D.N.C. 2012) (concluding that ALJ's failure to articulate a reason for according controlling or great weight to the state agency consultant's opinion was error, particularly in light of treating and examining source opinions to the contrary). The ALJ explained that she assigned great weight to these opinions because "they were supported by a thorough analysis of the record as a whole" and, as outlined below, other parts of the opinion provide further explanation making the reasons for the ALJ's weight assignment clear. First, the ALJ credited Dr. Kohli's psychological consultative examination findings regarding Claimant's mental functional ability which opined Claimant could "understand, retain, and follow instructions; sustain attention to perform simple, routine, repetitive tasks; relate to others including fellow workers and supervisors; and tolerate stress and pressure associated with day-to-day work activity." (R. 21). Within the

16

opinion, the ALJ also indicates the following which further explains and supports her weight assignment: (1) Claimant's GAF score of 60 in the February 2008 psychological consultative examination "is credible because the record supports that the claimant's level of functioning is generally in the mild to moderate range" (R. 19); (2) Claimant went to the hospital in August 2009 for anxiety related to threats from an estranged husband, but was discharged in stable condition and given a no refill prescription for Ativan (R. 19); and (3) Claimant waited almost nine months to seek psychological counseling after it was recommended in an emergency room visit (R. 19). Also, the ALJ discounted Dr. Ramsey's more limiting opinion of Claimant's work abilities based on the "sparse" mental health treatment records which further explains her weight assignment for the state agency opinions. (R. 21, 511). The state agency opinions that Claimant is capable of performing simple, routine, repetitive tasks are not otherwise inconsistent with the medical record. Accordingly, the ALJ did not err in assigning great weight to the state agency consultant opinions.

## 3. Dr. Watford's Opinion

Claimant contends the ALJ erred in assigning only little weight to Dr. Watford's opinion that Claimant could lift no greater than 10 pounds, specifically taking issue with the ALJ's justification for doing so. Pl.'s Mem. at 8. The ALJ accurately summarized Dr. Watford's findings and then explained the weight attributed to Dr. Watford's opinion as follows:

Nevertheless, the claimant continued to complain of neck, shoulder, and low back pain. Although the claimant had a limited range of motion in those areas at an appointment with family practitioner Douglas Watford, M.D. on May 20, 2008, she was continued on her current medications. In addition Dr. Watford limited the claimant to lifting no greater than ten pounds for only three months (Exhibit 11F/3), which is not consistent with the claimant's reports of disabling pain. The record indicates that Dr. Watford only treated the claimant on three other occasions, on August 28, 2008 (Exhibit 11F/1), October 22, 2008 (Exhibit 11F/2), and June 29,

17

2009 (Exhibit 11F/2).

. . . .

I considered the opinion of family practitioner Douglas Watford, M.D. who on May 20, 2008 opined that the claimant could lift no greater than 10 pounds (Exhibit 11F/3). Dr. Watford renewed the claimant's lifting restrictions on June 29, 2009 (Exhibit 11F/2), the claimant's last appointment of record. I assigned little weight to Dr. Watford's opinions because they are not supported by his treatment records or the record as a whole. In addition, although the doctor does have a treating relationship with the claimant, as previously mentioned the record reveals that actual treatment visits have been relatively infrequent. Moreover, the vocational expert testified to sedentary jobs that exist in significant numbers in the national economy. However, I did not adopt such restrictions because there is no objective basis.

(R. 18, 21).

Claimant contends that one of the ALJ's reasons for discounting Dr. Watford's opinion was that his opinion would dictate a finding that Claimant was only capable of sedentary work. However, the court's review of the ALJ's opinion does not indicate this was a reason for declining to assign greater weight to Dr. Watford's opinion. The ALJ made clear that her two reasons for assigning little weight to Dr. Watford's opinion were that the opinions are not supported by the record and the treatment records show "relatively infrequent" treatment visits. (R. 21).

Claimant appears to contend that Dr. Watford's opinion should have been assigned controlling weight because it is well-supported and not inconsistent with other evidence of record. Pl.'s Mem. at 9. As for Dr. Watford's own records, the ALJ noted that despite Dr. Watford's observation that Claimant had limited decreased range of motion in her neck, shoulders, and back, he continued her on her current medications with no change in treatment. (R. 418). Additionally, the ALJ noted that Dr. Watford only limited Claimant to lifting restrictions for three months, which was renewed months later, but on the whole is inconsistent with disabling pain. The ALJ further stated that the other medical evidence of record does not support Dr. Watford's restriction. While

18

the ALJ does not specifically cite in her discussion of Dr. Watford's opinion the conflicting medical evidence she is referring to, her thorough summary of the medical evidence of record makes it clear for the court. For instance, the ALJ states the following: (1) an X-ray of the cervical spine "showed reversal of the cervical lordosis, but was otherwise unremarkable" and Claimant was referred for physical therapy, but did not attend scheduled physical therapy appointments (R. 18, 320, 327-28); (2) a cervical spine MRI indicated a small disc herniation and Claimant was recommended physical therapy which significantly improved her neck pain (R. 18, 319, 402); (3) Claimant's low back pain was treated conservatively with medication, Claimant refused the recommended spinal injection because the pain was not bad enough and was instructed to return as needed (R. 18, 350, 397); (4) the consultative examination in August 2009 indicated Claimant had limited range of motion of the lumbar spine, but full range of motion in the cervical spine and was able to walk heel to toe and squat and rise (R. 18, 424); and (5) the August 2009 consultative examination further indicated Claimant's neurologic examination was benign and there was no need for surgical intervention (R. 19, 425). Having adequately explained the reasons for discounting Dr. Watford's opinion, the ALJ's decision to assign little weight is supported by substantial evidence and not legal error.

4. **Dr. Ramsey's Opinion**

Finally, Claimant contends the ALJ improperly weighed the opinion of Dr. Donna Ramsey, Claimant's psychologist, that Claimant could not work due to her mental impairments and that the ALJ's reason for discounting Dr. Ramsey's opinion is "demonstrably false." Pl.'s Mem. at 9. The ALJ accurately summarized Dr. Ramsey's findings and then explained the weight attributed to Dr. Ramsey's opinion as follows:

19

About nine months later, the claimant began receiving care at Precision Health Care Services in May 2010 (Exhibit 24F/1). In her initial assessment on May 17, 2010, although notes indicate that the claimant's insight and judgment were poor, it is also noted that the claimant was again oriented to person, place, date, and situation. She reported a decreased appetite, sleep disturbance, stress, and worry (Exhibit 24F/7). She was diagnosed with depression and PTSD (Exhibit 24F/8). The claimant's GAF was also estimated at 45 (Exhibit 24F/9), indicating serious difficulties in overall functioning. I am not persuaded by this GAF score because the longitudinal evidence of record shows that she is not so limited. In fact, the claimant waited almost nine months to seek psychological counseling after it was recommended during her emergency room visit. In addition, although the claimant testified to regular therapy, there are no records in evidence to support this.

. . . .

I considered the opinion of the claimant's therapist Donna Ramsey, LCSW, Ph.D., who concluded that the claimant was not capable of returning to the work force for both physical and psychological reasons (Exhibit 23F/2). However, I was not persuaded by Dr. Ramsey's opinion because it is not supported by the sparse mental health treatment of record. Further, Dr. Ramsey is not qualified to make determinations about the claimant's physical abilities because it is outside her area of expertise. Therefore, little weight was given.

(R. 19, 21-22). Here, the ALJ fully considered the medical evidence of record from Dr. Ramsey as evidenced by the above summary. However, the ALJ appropriately noted that there were no regular records from Dr. Ramsey documenting visits or therapy sessions with Claimant. The evidence of record only includes Dr. Ramsey's initial assessment in May 2010 along with its addendum and Dr. Ramsey's letter submitted to the Social Security Administration in December 2010. (R. 507-531). There were limited mental health records from Dr. Ramsey to support the extreme mental limitations she outlines in her letter (R. 510-12) and, as noted by the ALJ, the longitudinal evidence of record does not show Claimant is as limited as Dr. Ramsey opined (R. 19).

Courts have clearly recognized that the ALJ is entitled to consider whether a physician's opinion is supported by clinical evidence and, if not, to accord such opinion significantly less weight. *See Craig*, 76 F.3d at 590. The ALJ did not err by considering Dr. Ramsey's opinion in the context

of her own evidence and other evidence of record and, accordingly, assigning her opinion little weight. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6) (listing factors to consider in weighing opinion evidence). Claimant's argument invites this court to re-weigh evidence that has already been considered and weighed by the ALJ. However, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176. Accordingly, the court finds that substantial evidence supports the ALJ's weight assignment and the ALJ did not err.

## VI. CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-26] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-28] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 2nd day of January 2014.

Robert B. Jones, Jr.
United States Magistrate Judge

21