IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:12-CV-00247-FL

| | |
|---|---|
| WILLIE MAE BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on the parties' cross-motions for judgment on the pleadings (DE 26, 28).[1] Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. issued a memorandum and recommendation ("M&R") (DE 31), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and that the final decision by defendant be affirmed. Plaintiff timely filed objections to the M&R and the response time has expired. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge.

**BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on June 19, 2009, and Supplemental Security Income ("SSI") on April 28, 2010, alleging disability beginning November 26, 2007. This application was denied initially and upon reconsideration. Hearing was held before

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin, Acting Commissioner of Social Security, has been named as defendant in this case in place of former Commissioner Michael J. Astrue.

an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled during the relevant time period in a decision dated May 23, 2011. The appeals council denied plaintiff's request for review on September 11, 2012, and plaintiff filed the instant action on October 19, 2012.

**DISCUSSION**

A.    Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the

2

record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in gainful employment since November 26, 2007. (R. 14). At step two, the ALJ found that plaintiff had the following severe impairments: cervical disc herniation, lumbar spondylosis, depression, post-traumatic stress disorder, and alcohol abuse. (R. 14). She also found that plaintiff had non-severe impairment of carpal tunnel syndrome or bilateral hand paresthesias. (R. 15). However, at step three, the ALJ further determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in the regulations. (R. 15).

Prior to proceeding to step four, the ALJ determined that plaintiff had residual functional capacity ("RFC") to perform a reduced range of light work with the following non-exertional limitations: remember and carry out one to two step instructions; perform simple, routine, repetitive tasks; and only occasional interaction with the public. (R. 17). In making this assessment, the ALJ

3

found plaintiff's statements about her limitations not fully credible. (R. 17-22). At step four, the ALJ determined plaintiff did not have the RFC to perform the requirements of her past relevant work as a mail carrier and home health attendant. (R. 22). At step five, upon considering plaintiff's age, education, work experience, and RFC, as well as testimony of a vocational expert, the ALJ concluded that plaintiff is capable of successfully adjusting to other work that exists in significant numbers in the national economy. (R. 22-23). Accordingly, the ALJ determined plaintiff had not been under a disability, as defined in the Social Security Act, during the relevant time period. (R. 23).

B.      Plaintiff's Objections

Plaintiff raises objections to the M&R, incorporating in part arguments raised in her brief in support of motion for judgment on the pleadings. Plaintiff argues that the ALJ failed to properly weigh the medical opinion evidence, specifically objecting to the weight given to the opinions of treating physician Dr. Francke, treating physician Dr. Watford, treating psychologist Dr. Ramsey, and state agency psychological consultants. Upon *de novo* review of plaintiff's objections, the court concludes that plaintiff's objections should be overruled.

1.      Dr. Francke

The ALJ considered three of Dr. Francke's opinions, dated September 2007, November 2007, and April 2008, and decided to accord them significant weight. (R. 20). Plaintiff contends the ALJ should not have given significant weight to the first two opinions because they were issued prior to the alleged disability onset date. (Obj. 1-2). Plaintiff contends these early opinions do not reflect the subsequent "three (3) years of treatment and deterioration that occurred before the ALJ's decision." (Obj. 1). In addition, plaintiff argues the third opinion should not be given significant

4

weight because it is a non-treating opinion entered without any examination of plaintiff. (Id. at 2).

In September 2007, Dr. Francke first memorialized the placement of plaintiff on light work restrictions beginning August 29, 2007. (R. 407, 409). Dr. Francke noted plaintiff reported a change in the location of her pain but not its severity. (R. 409). In an opinion dated November 20, 2007, only six (6) days prior to the alleged onset date, he recommended the maintenance of light work restrictions. (R. 402). At a subsequent appointment in January 2008, plaintiff reported that a new prescription "helped somewhat" with recurring left arm pain. (R. 399). Furthermore, in February 2008, Dr. Francke "suggested that perhaps a series of epidural steroid injections of the lumbar spine might help with [plaintiff's] symptoms. [However, plaintiff] does not think that her pain is bad enough to warrant that." (R. 397). This evidence suggests the severity of plaintiff's pain lessened or, at worst, remained constant from the time immediately preceding her alleged onset date. The fact that the September 2007 and November 2007 opinions preceded the alleged onset date is insufficient standing alone to attenuate the relevance of these opinions.

The ALJ properly evaluated these treating source opinions pursuant to the regulations, specifically considering consistency "with the record as a whole." 20 C.F.R. § 404.1527(c)(4). In addition, the ALJ's consideration of the pre-onset date opinions was proper. The ALJ is required to "consider all evidence available in [an] individual's case record." 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1527(c) ("[The Commissioner] will evaluate every medical opinion [she] receive[s]."). See also Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) (explaining the Commissioner must consider "all relevant evidence") (internal quotation marks omitted). Substantial evidence exists in the record to support the earlier opinions. Accordingly, plaintiff's objection is overruled in this regard.

5

Plaintiff also contends Dr. Francke's April 2008 opinion should not be considered a treating source opinion as the evidence is not clear that plaintiff was present during that appointment. (Obj. 2). However, the April 2008 opinion merely restates Dr. Francke's earlier opinion regarding the maintenance of plaintiff's light work restrictions. (R. 396). Where substantial evidence exists in the record to support this opinion, as the court has determined earlier, plaintiff's objection is overruled in this regard.

    2.    Dr. Watford's Treating Source Medical Opinion

Plaintiff contends the ALJ improperly discredited the treating source medical opinion of Dr. Watford, incorporating in part arguments raised in her brief in support of motion for judgment on the pleadings. (Obj. 3). Dr. Watford restricted plaintiff to lifting no more than ten (10) pounds. (R. 417-418). This type of restriction is categorized as "sedentary work." 20 C.F.R. § 404.1567(a).

Although the opinion of a treating source generally is entitled to "great weight," the ALJ is not required to give it "controlling weight." Craig, 76 F.3d at 589-90. "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. at 590. If the ALJ determines a treating source opinion should not be given controlling weight, then the ALJ must evaluate and weigh the opinion according to the following non-exclusive list: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). The ALJ must state the weight given to a treating source's medical opinion and provide specific reasons for the weight given to those opinions. SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

6

The ALJ assigned "little weight" to Dr. Watford's opinion and explained the basis for such decision. (R. 18, 21). In particular, the ALJ determined that Dr. Watford's opinion was not supported by his treatment notes or the record as a whole, and the treatment relationship with plaintiff was infrequent. (R. 21). For example, during plaintiff's last known appointment with Dr. Watford, he described one of plaintiff's physical conditions, but he did not change her prescriptions. (R. 417). This action lends credence to the fact that plaintiff's pain is adequately managed and is not disabling. The M&R provides a thorough discussion of the manner in which Dr. Watford's opinion is inconsistent with the other medical evidence in the record. (M&R 18-19). In addition, contrary to plaintiff's characterization, the ALJ did not reject all treating source medical opinions. In fact, although the ALJ gave "little weight" to Dr. Watford's opinion, she gave "significant weight" to Dr. Francke's opinion. (R. 20-21).

Plaintiff also contends the ALJ improperly dismissed Dr. Watford's opinion by relying on the fact that sedentary jobs exist in significant numbers in the national economy. (Obj. 3). However, the ALJ explicitly did not rely on this fact in deciding to discredit Dr. Watford's opinion. The ALJ specifically "did not adopt such [sedentary] restrictions because there is no objective basis." (R. 21). Moreover, even if the ALJ had adopted the sedentary restriction, the ultimate disability determination would not have changed because substantial numbers of sedentary jobs exist in the national economy to which plaintiff is capable of adjusting. (R. 21, 49-50).

In sum, the ALJ relied on substantial evidence in assigning "little weight" to the opinions of Dr. Watford. Therefore, this objection is overruled.

3. Opinions of Dr. Ramsey and State Agency Psychological Consultants

Plaintiff argues the treating source opinion of Dr. Ramsey, who opined plaintiff was not

7

capable of returning to the workforce for both physical and psychological reasons, should be given more weight than the opinions of the state agency consultants, who opined plaintiff was able to understand and remember simple instructions and complete simple routine tasks for a two-hour period at non-production pace with reduced social interaction and only casual public contact. (Obj. 2-3; R. 21). Plaintiff contends the ALJ cannot accord great weight to the opinions of state agency psychological consultants "when their conclusions are inconsistent with significant pieces of medical evidence which they did not have the opportunity to review." (Obj. 2). In particular, plaintiff contends the ALJ erroneously accorded great weight to the opinions of the state agency consultants because they did not have the benefit of the opinion of Dr. Ramsey, who treated plaintiff after the state agency evaluations. (Id. at 2-3).

Although the opinion of a treating source generally is entitled to "great weight," the ALJ is not required to give it "controlling weight." Craig, 76 F.3d at 589-90. "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. at 590. In addition, the ALJ must state the weight given to a treating source's opinion and provide specific reasons for the weight given to those opinions.

As noted in the M&R, plaintiff waited almost nine months to seek psychological counseling after it was recommended in an emergency room. (M&R 17). This fact suggests plaintiff's mental health impairments are not as severe as she claims. The only medical evidence in the record of her mental health treatment is the initial assessment Dr. Ramsey prepared and a letter she sent to the Social Security Administration. (R. 513-21, 510-11).

In the initial assessment prepared May 17, 2010, Dr. Ramsey noted the following regarding plaintiff: (1) oriented to person, place, date, and situation; (2) medicine controls depressive-like

8

symptoms, including poor concentration; (3) thinking processes are unremarkable; (4) attempted suicide in 1983, but does not have suicidal thoughts since being prescribed an anti-depressant; and (4) not a danger to others. (R. 519). In addition, Dr. Ramsey indicated her initial diagnostic impression was that plaintiff had a current global assessment functioning ("GAF")[2] of "45 Highest in Past Year." (R. 520). However, it is unclear what longitudinal evidence Dr. Ramsey based this GAF on since she prepared the assessment after only a fifty-minute initial interview. (See R. 520). Dr. Ramsey's initial assessment is devoid of any explanation why she determined plaintiff had this GAF. Notably, although Dr. Ramsey initially diagnosed plaintiff with severe depression, she simultaneously indicated plaintiff's depressive symptoms are controlled by medication. (R. 519).

On December 8, 2010, Dr. Ramsey sent a letter to the Social Security Administration in support of plaintiff's application for disability benefits. (R. 510-11). In the letter, she indicated plaintiff underwent regular psychotherapy. (R. 510). However, there is no further evidence in the record of such regular therapy or any additional treatment. In addition, Dr. Ramsey's opinion is inconsistent with the clinical evidence in the record. For example, in her letter, she opined plaintiff is not "capable of returning to the work force for both physical and psychological reasons." (R. 511). However, in her initial assessment, she indicated plaintiff's depressive-like symptoms are

---

[2] The GAF scale ranges from zero to one hundred and measures a person's overall psychological, social, and occupational functioning. AM. PSYCHIATRIC ASS'N., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. text rev. 2000). Selected GAF scores have the following meanings:

   60-51    Moderate symptoms OR moderate difficulty in social, occupational, or school functioning.

   50-41    Serious symptoms OR any serious impairment in social, occupational, or school functioning.

Id. at 34. The case law is varied with respect "to the exact import of GAF scores," and there is no precedent from the Fourth Circuit on the issue of whether there is a specific GAF benchmark of employability, under which an individual is per se unemployable. Beasley v. Astrue, No. 7:10-CV-232-FL, 2012 WL 707091, at *5-6 (E.D.N.C. Mar. 5, 2012).

9

controlled by medication. (R. 519). Moreover, the record contains no clinical evidence of plaintiff's mental health treatment other than Dr. Ramsey's initial assessment.

By contrast, the state agency consultants' opinions are more consistent with the record as a whole and thus should be given more weight. See 20 C.F.R. § 404.1527(c)(4). The record includes the opinions of two consultative examiners, Drs. Kohli and Albert, in addition to the opinions of the state agency consultants. Each state agency consultant's opinion was submitted after at least one of the consultative examiners' opinions. (R. 19, 21). Thus, as noted in the M&R, the state agency consultants had the benefit of at least one examining source's opinion.

The M&R provides a thorough discussion of how the state agency consultants' opinions are consistent with the evidence in the record, including the examining source opinions. (M&R 16-17). The state agency consultants generally opine plaintiff "would be able to do simple, routine, repetitive tasks" "in a low stress, low social, low production environment." (R. 456, 380, and 505). These opinions are consistent with the opinion of consultative examiner Dr. Kohli, who opines plaintiff "can sustain attention to perform simple repetitive tasks," and "is able to tolerate the stress and pressure associated with day-to-day work activity." (R. 430). In addition, the state agency consultant opinions are mostly consistent with the opinion of Dr. Albert, who opines plaintiff had a GAF of 60, evincing moderate difficulties, and "can understand, retain, and follow simple directions." (R. 367). Dr. Albert further opines "that it would be difficult for [plaintiff] to tolerate the stress and pressures associated with day-to-day work activities." (R. 367). However, the ALJ discredited Dr. Albert's opinion in this regard where it was "not supported by Dr. Albert's examination or the record as a whole," and "was also based on [plaintiff's] self-reports." (R. 21).

10

Other facts in the record support the opinions of the state agency consultants. For example, as noted in the M&R, plaintiff went to the hospital emergency room in August 2009 for anxiety related to threats from an estranged husband, but she was discharged in stable condition and given a no refill prescription for Ativan. (M&R 17; R. 19). In addition, as noted earlier, plaintiff waited almost nine months to seek psychological counseling after it was recommended during the emergency room visit. (M&R 17; R. 19). Even Dr. Ramsey acknowledged plaintiff's depressive-like symptoms are controlled by medication. (R. 519).

In sum, the ALJ relied on substantial evidence in the record in assigning Dr. Ramsey's opinion "little weight" and the opinions of the state agency consultants "great weight." In addition, she explained the reasons for the weight given to these opinions. The ALJ carefully considered the record and found the opinions of the relevant non-examining and examining sources to be more consistent with the record than the opinion of the treating source. The court cannot re-weigh the evidence or substitute its judgment for that of the ALJ. Craig, 76 F.3d at 589.

Plaintiff cites Radford v. Colvin, 734 F.3d 288, 295-96 (4th Cir. 2013), as support for the proposition that it is improper to reject treating source opinions in favor of non-examining state agency opinions. (Obj. at 2-3). However, in Radford, there was extensive medical treatment evidence, and the ALJ discredited the opinions of those treating physicians in favor of the state medical examiners without any explanation. Radford, 734 F.3d at 295-96. Here, in contrast, the record of plaintiff's mental health treatment is sparse, the ALJ explained her reasons for giving great weight to the opinions of the state agency consultants, and the state agency opinions are more consistent with the record as a whole. Based on the foregoing, this objection is overruled.

11

## CONCLUSION

Upon *de novo* review of those portions of the M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court ADOPTS the recommendation of the magistrate judge, DENIES plaintiff's motion for judgment on the pleadings (DE 26), GRANTS defendant's motion for judgment on the pleadings (DE 28), and AFFIRMS the final decision by defendant. The clerk is DIRECTED to close this case.

SO ORDERED this the 27th day of March, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge